## In re WILLIAMS et al.
### Patent Appeal No. 3007.

Court of Customs and Patent Appeals.

Dec. 19, 1932.

Langdon Moore, of Washington, D. C. (James Atkins, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 27, 28, 29, and 30 of appellants' application, filed March 27, 1925, as being not patentably distinct from subject-matter disclaimed by appellants, in view of the cited references, and as being a mere aggregation. Claim 27 is illustrative of the claims here involved and reads as follows:

"27. In a fluid fuel burner construction including an electric motor operating a fuel pump and fan blower with an air conduit leading from the blower to the furnace and a fuel pipe leading from the pump passing through the conduit terminating in a nozzle at the open end of said conduit, a double unit safety switch in the motor circuit, one unit having an actuating thermal element to make and break the circuit through said unit upon ignition and failure of the burner flame, respectively, said thermal unit including a tubular member connected to said unit and terminating in a coil arranged on the exterior of the air conduit adjacent the furnace end thereof, a housing about said coil having an open end adapted to enter the furnace, and means upon the air conduit for deflecting a

portion of the air therefrom to pass through the said housing over the coil into the furnace, the other element comprising a manually operable switch to close the motor circuit there through, a thermal device for holding it in closed position, a shunt circuit, a heating element in said shunt circuit adapted, when the main circuit is broken through the first unit, to receive the full current of the motor circuit to operate the heating element to release the latter switch to break the motor circuit."

The references relied upon are:

Applicants' disclaimer of the issue of interference No. 55232.

Fournier, 1,144,649, June 29, 1915.

Delaunay-Belleville, 1,164,268, December 14, 1915.

Haas, 1,476,201, December 4, 1923.

Scott, 1,602,175, October 5, 1926.

The application relates to oil burner construction, including an electric motor operating a fuel pump and fan blower, with an air conduit leading from the blower to the furnace and a fuel pipe leading from the pump, passing through the conduit, terminating in a nozzle at the open end of the conduit. There is provided a double-unit safety switch in the motor circuit, operated by a time element member and a thermo member connected by a tube to a thermo coil in a casing or housing arranged near the furnace end of the air conduit. The bottom of the air conduit, at the rear of the nozzle, but forward of the end closure of the housing, is struck up to form a baffle which deflects a portion of the air passing from the fan on its way to the nozzle and causes it to pass over the coil into the furnace, whereby the passage of this cool stream of air tends to protect the coil from the intense heat of the burning oil and assists in rapid cooling of said coil upon failure of combustion.

Appellants were parties to an interference proceeding, No. 55232, with one Duemler and one Koeln, joint applicants, the counts of which interference read as follows:

"1. The combination with a heating element, of a burner, a motor for operating said burner, an ignition device for said burner, a power circuit for said motor and said ignition device, a resistance circuit connected with the power circuit, a switch for controlling said power circuit, a thermostatic switch under the influence of heat from the burner operable to close the power circuit after the burner has heated the device to a predetermined temperature, and means for opening the power switch operable upon a

predetermined temperature developed in said resistance circuit.

"2. The combination with a heating element, of a burner, a motor for operating said burner, a power circuit for said motor, a resistance unit connected in the power circuit in series with said motor, a switch for controlling said power circuit, a switch under the influence of combustion conditions of the burner, said switch being normally open and operating upon the establishment of combustion to close and thereby short-circuit the resistance unit preventing further heating thereof, and means for opening the power circuit operable upon a predetermined temperature developed in the resistance unit."

After the declaration of said interference, appellants filed a disclaimer and canceled the claims which corresponded to said interference counts, stating in their letter of disclaimer that it was found that the subject-matter of said counts was broader than the joint invention of appellants and was the subject-matter of the sole invention of appellant McCabe.

The examiner and the Board of Appeals held that the subject-matter involved in this appeal is not patentably distinct from that disclaimed by the applicants in the interference referred to, when considered in connection with the cited patents.

Appellants contend that their said disclaimer of the broad combination, which included "a thermostatic switch under the influence of heat from the burner operable to close the power circuit after the burner has heated the device to a predetermined temperature" and "a switch under the influence of combustion conditions of the burner," can have no possible effect upon the patentability of appellants' present claims, which are limited to a structure which produces a result not possible of accomplishment by the structure of the interference claims. While this statement, standing alone, may be true, it is also true, as contended by the solicitor for the Patent Office, that, appellants having admitted that they are not entitled to the interference counts, they also are not entitled to any subject-matter failing to define invention thereover, and the disclaimed interference issue is available with the same effect as a prior art reference disclosing such subject-matter. In re Wickers & Furlong, 29 App. D. C. 71; In re Sommer, 56 F.(2d) 893, 19 C. C. P. A. 1030.

The features relied upon by appellants to lend patentability to the claims here involved over the interference issue relate to the "thermal unit including a tubular member connected to said unit and terminating in a coil arranged on the exterior of the air conduit adjacent the furnace end thereof, a housing about said coil having an open end adapted to enter the furnace, and means upon the air conduit for deflecting a portion of the air. therefrom to pass through the said housing over the coil into the furnace."

The Patent Office tribunals found that these features are suggested by the prior art, and that therefore there was no invention in specifically including them as an element in the claims here involved.

With respect to the reference Scott, appellants call our attention to the fact that at the time said Scott patent was issued appellants' application was pending, but they do not urge that it is not a proper reference. That it is a proper reference under the facts in this case, no claim having been made by appellants in the Patent Office that their invention was in fact prior to that of Scott, and the application of Scott having been filed prior to the application of appellants, is established by our decisions in the cases of In re Smith, 36 F.(2d) 522, 17 C. C. P. A. 752, and In re Germantown Trust Co., 57 F.(2d) 365, 19 C. C. P. A. 1140.

It is conceded by appellants that the references Fournier and Delaunay-Belleville disclose a thermostat similar to that disclosed and claimed by them, but they contend that there is no disclosure in said references of a use of such thermostat in connection with an oil burner, or any implication that the thermostat may be so used with a coil in proximity to the burner flame and in the path of the air on its way to the nozzle. We are in agreement with this contention of appellants.

The Haas patent relates to an oil burner in which there is an air tube, one end of which also constitutes a combustion chamber, adjacent to which is the nozzle of a fuel atomizer and two electrodes between which passes the igniting spark; a chamber is placed around one of the electrodes and a pipe leads therefrom to a funnel positioned to receive a portion of the air passing from the blower, and this air, passing up through an opening in said electrode housing, is designed to prevent soot and other objectionable material from lodging around the electrode; a thermostat is located upon the exterior of the combustion chamber, with one arm extending into said chamber, near and forward of the nozzle. Therefore, by virtue

of the positioning of the thermostat with respect to the nozzle, any air passing said thermostatic member during combustion is heated before it reaches it.

We agree with the Patent Office tribunals that the Fournier and Delaunay-Belleville references show that the particular form of thermal unit described in the claims is old, and that the references Haas and Scott show it to be old to place a thermal actuating member in such a position as to be affected by the heat in the combustion chamber and in the path of the air supply.

It will be observed that the claims in issue include the following elements: A coil, which is the actuating member of a thermostat, arranged on the exterior of the air conduit, adjacent the furnace end thereof, a housing about said coil having an open end adapted to enter the furnace, and means upon the air conduit for deflecting a portion of the air therefrom to pass through said housing over the coil into the furnace.

The reference Haas does not show an actuating member of a thermostat upon the exterior of the air conduit, adjacent the furnace end thereof; it does not show a housing about said actuating member and, not showing any such housing, it of course does not show any means upon the air conduit for deflecting a portion of the air therefrom to "pass through the said housing" over the coil into the furnace. It does show an actuating thermostatic member *within* the furnace or combustion chamber; it shows a housing over the lower electrode, and means upon the air conduit for deflecting a portion of the air therefrom to pass through the housing of the said electrode, and from thence into the combustion chamber in which the actuating thermostatic member is located. In the Haas reference, however, the fuel stream from the nozzle is interposed between said thermostatic actuating member and the air emerging from said electrode housing.

The reference Scott does not show an actuating member of a thermostat upon the exterior of the air conduit, but does show such a member adjacent to the furnace, and located within a burner with which the air conduit is connected. It shows no housing over such actuating member and no means upon the air conduit for deflecting a portion of the air therefrom over said thermostatic actuating member.

While, as shown above, neither singly nor together do the references show all of the elements of the thermal unit assembly recited in said claims, upon which elements appellants rely for patentability of the claims on appeal over the interference issue, the question remains whether the inclusion of the particular elements relied upon, as claimed, required the exercise of the inventive faculty, in view of these references.

We think the fair construction of appellants' claims is that, during combustion, air which has not been heated by direct contact with any flame passes over said coil, which is the actuating member of the thermostat, and thence into the furnace, while in the references, so long as combustion continues, air heated by direct flame passes over the thermostatic members.

Appellants contend that this fact constitutes a great improvement over the prior art, requiring the exercise of the inventive faculty. The fact is, however, that neither in appellants' device nor in the devices of the references do the thermostatic actuating members begin to function for the purpose of opening the circuit until there is a failure of combustion. In all of these, the circuit is opened by the cooling of the actuating members of the respective thermostats (being the thermostat first mentioned in the claims on appeal), and there is at such time no air heated by direct contact with any flame in any of the structures. In Haas and Scott, however, after the flame has been extinguished, the burner or nozzle will retain heat for some length of time, and consequently the air passing over it will absorb some degree of this heat, so that the air passing over the thermal actuating member will be heated to some extent. In appellants' device, the air passing over the coil, which constitutes appellants' thermal actuating member, will not have come in contact with the burner or nozzle at all, as a result of which appellants' thermostat may function to open the circuit somewhat sooner than will the thermostats of the references after the flame has been extinguished.

Appellants contend that, due to the fact that in their device cool air is directed over the thermal actuating member both during combustion and after combustion has ceased, a double benefit is obtained, in that their thermal element is never heated during combustion to the degree to which the thermal elements of the references are heated during combustion, and requires less cooling in order to permit it to function upon failure of combustion, and further that the direction of cool air upon their thermal element after

combustion, as opposed to air which has absorbed some heat from the heated nozzle as in each of the references, also tends to secure a quicker cooling of the thermal element.

We think it may fairly be said that appellants' device, when used in combination, with the other elements set forth in the claims, does bring about a new and useful result, and while there may be a question as to whether, in view of the references, especially the Scott reference, appellants have done more than would be obvious to one skilled in the art, we think there is sufficient doubt upon this question to require the application of the rule that doubts as to patentability shall be resolved in favor of the applicant.

Applying this rule, the decision of the Board of Appeals should be reversed unless the second ground of rejection, viz., that appellants' claims are mere aggregations, should be sustained. Upon this question the board said: "Respecting the rejection of the claims on the ground of aggregation, it may be stated that there is no interdependence in action in the production of a unitary result between the specific devices for delivering the fuel elements to the combustion zone and the specific automatic means claimed for stopping the operation of the apparatus in the event that the flame becomes extinguished."

We cannot agree with the above conclusion of the Board of Appeals. It seems to us that there is interdependence of action in the production of a unitary result between the specific devices for delivering the fuel elements to the combustion zone and the specific automatic means set forth in said claims, hereinbefore discussed in connection with the first ground of rejection. These means co-operate with the other elements named in the claims, with the result that the flow of oil, upon failure of combustion, ceases at an earlier point of time than would be the case were not such specific means used. It seems to us that this constitutes such interdependence in action as to constitute a true combination of the elements named in the claims, and therefore the rejection of the claims upon the ground of aggregation should not be sustained.

For the reasons stated, the decision of the Board of Appeals is reversed as to all of the appealed claims.

Reversed.