**23 C.C.P.A.(Patents)**

### In re COLE.

### Patent Appeal No. 3619.

### Court of Customs and Patent Appeals.
### April 6, 1936.

H. H. Benjamin, of Washington, D. C. (Morris Hirsch, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 4 to 7, inclusive, 9, 10, 12, and 16 to 19, inclusive, of appellant's application. The ground of rejection was that all of the claims lacked patentability in view of certain interference proceedings, hereinafter referred to, and the cited prior art.

Claim 12 is illustrative of the claims in issue, and reads as follows: "12. An electrolytic condenser of the character in which a metallic shell which houses the condenser structure comprising a cathode and an anode foil serves as one of the condenser terminals, an insulating closure secured within the end of the shell and including a threaded reduced extension adapted to pass through an opening in a supporting member with the condenser in inverted position, said insulating closure including a shoulder adapted to abut the support member and to be tightened thereagainst by a nut applied to the reduced extension section of the closure, said closure having a bore therein, a headed screw extending through the bore, the inner headed end of the screw being disposed in a recess at the interior of the closure and clamping the other condenser terminal within said recess, the outer end of the screw projecting beyond said closure and serving as a binding post for establishing electrical connection with said terminal."

The references and proceeding relied upon are:

Fansteel, etc. (French), 668,334, July 9, 1929.

Georgiev, 1,789,949, January 20, 1931.

Engle et al., 1,959,415, May 22, 1934.

Counts of Interference No. 65,453.

The alleged invention is described in the statement of the examiner as follows:

"Applicant's device relates to an electrolytic condenser and especially to the mounting of the condenser. The electrolytic condenser is of the so-called dry type, that is, the two electrodes are in the form of strips of sheet metal separated by an absorbent sheet. This absorbent sheet carries the electrolyte and there is no surplus electrolyte in the container. The interleaved electrode sheets and spacers are rolled into a condenser roll with terminals extending from the roll. This condenser roll is mounted in a metal container 13 which has a suitable gas pervious vent for allowing accumulated gas to escape. One electrode is connected to the metal container which may thus serve as a terminal. One end of the container is open through which the condenserr roll is inserted in the container can. The open end of the container is closed by an insulating closure member 19. This insulating closure serves the double function of closing the open end of the container and as a mounting means. The container is provided with a shoulder 44 against which the cover is held by spinning over the edge of the can around the gasket 28 positioned in a slot around the periphery of the cover. The cover has a reduced extension which serves as a mounting projection. The projection is inserted through a panel, conducting or non-conducting, and a fastening means attached to the projection on the opposite side of the panel from the condenser. The reduced extension is threaded; a nut 37 cooperates with the threaded extension to hold it on the panel. The reduced extension is provided with a shoulder 23 as shown in Figs. 1 and 2 for keeping the can from contacting with the panel if it is not desired to connect the electrode and can container to the panel. The shoulder is omitted as shown in Figs. 3 and 4 if it is desired to have the can contact the panel.

"The cover is provided with a central bore in which the terminal for the other electrode is mounted. Connection to this electrode can thus be made below the panel leaving no exposed wires. This terminal is also provided with sealing means as gaskets so that any surplus electrolyte not absorbed in the spacer cannot leak out of the container. This gasket like the gasket around the periphery of the cover is placed in a recess in the cover. The terminal in the cover may be sealed on both sides of the cover."

Appellant contends that the foregoing statement of the examiner is in error in his reference to the panel as optionally nonconducting; we assume the examiner understood that the panel itself was electrically conductive, and that whether it was conductive or nonconductive with respect to the condenser can depended upon the type of closure plug used, being nonconductive with the plug having the insulating shoulder, and conductive with the plug which has no such shoulder. For the purposes of this case we will assume that said panel is conductive.

The counts of Interference No. 65,453, relied upon by the Patent Office tribunals, read as follows:

"1. In an electrolytic condenser, a metal container, an insulating closure plug in the mouth of the container locked in position by the container itself, said closure member including an extension portion adapted to pass through an opening in a mounting plate and externally threaded to receive a securing nut applied from the side of the plate opposite to the condenser.

"2. In an electrolytic condenser, a metal container, an insulating closure member in the mouth of the container, terminal means passing through said member, said closure member including a reduced extension adapted to pass through an opening in a mounting plate and externally threaded to receive a securing nut applied from the side of the plate opposite to the condenser."

The patent to Georgiev relates to an electrolytic cell and shows a dry type electrolytic condenser of the roll type mounted in a metal container, which container serves as one terminal of the condenser, one electrode being connected to the can container. The container is closed by an insulating closure member which in turn carries the other terminals of the condenser mounted in the container. The container is also provided with an automatic vent which allows gas given off during the operation of the device to escape. The vent consists of a rubber member which has an opening closed under ordinary pressure conditions, but which opens when the gas pressure increases. The cover is positioned against a bead in the container, which forms a shoulder for the cover to rest on. The cover has a slot positioned around the periphery

in which slot a rubber gasket is placed. The edge of the container is then turned down over the gasket to form a liquid-tight seal. The terminals of the condenser extend through bores in the cover, and the openings between the terminals and the cover are suitably sealed to prevent leakage of the electrolyte.

The patent to Engle et al. shows a condenser of the wet type. The container serves both as an electrode and as a terminal of the condenser. The container holds a fluid electrolyte in which the other electrode is immersed. The anode or film formed electrode is supported in the electrolyte in the container by the cover. The cover is of insulating material and is mounted in the container on a bead which forms a shoulder for the cover to rest on. The cover has a peripheral slot in which is mounted a gasket member of rubber and asbestos. The edge of the container is turned over to press against the gasket to form a liquid-tight seal. The anode electrode is supported on a terminal rod which passes through a bore in the cover and is suitably sealed to prevent leakage of electrolyte.

The examiner stated that the Fansteel (French) patent is a duplicate in disclosure of the Engle et al. patent, and appellant apparently agrees with this statement for the Fansteel patent is not included in the record before us.

The interference proceeding hereinbefore referred to, and two other interference proceedings, to each of which appellant was likewise a party, are described in the statement of the examiner. Immediately following the quotation of counts 1 and 2 in Interference No. 65,453, the examiner states: "Applicant was involved in Interferences No. 61,997 and No. 61,998 with other parties who could have made these claims and applicant failed to move their addition to these Interferences 61,997 and 61,998 under Rule 109. The grounds for estoppel are pointed out in Paper No. 19, pages 2 and 3 of Interference No. 65,-453, where the Examiner of Interferences stated: 'Prior to the establishment of this controversy the parties Woodhull, Danziger, Cole, Sprague, and Burt, all the parties here-involved except Levenberg, were involved in Interferences Nos. 61,997 and 61,998. Motions to dissolve in each of these previous interferences were granted; and no appeals were taken from this action. * * * all the parties, save only Levenberg, previously were brought together in two interferences; had they wished a contest of priority upon subject matter such as that portrayed in the present counts, they should have brought appropriate motion to cause the introduction of such subject matter into earlier issues.' "

Appellant concedes that he is estopped from claiming a patent to claims corresponding to said interference counts, but contends that where an interference is dissolved without judgment of priority, generic claims as to which an estoppel arises may not be treated in effect as prior art, and combined with prior patents in order to extend the estoppel rejection to claims of more limited scope asserted by one of the parties and not readable on the disclosures of any of the other parties. As we understand, it is appellant's theory that the claims here involved should be allowed because of the limitations therein not found in the interference counts, even though said claims may not involve an inventive difference over the counts of the interference.

Appellant also claims that there is, in fact, an inventive difference between the claims before us and the counts of the interference.

In the case of In re Dodge, 74 F.(2d) 756, 22 C.C.P.A. (Patents) 869, we sustained a rejection of certain claims on the ground that the claims were not patentably distinct from the subject-matter of an issue of an interference which was dissolved on the motion of Dodge; the ground of the motion being that the claims were unpatentable over the prior art.

The case of In re Sola, 77 F.(2d) 627, 630, 22 C.C.P.A. (Patents) 1313, involved certain claims, the general subject-matter of which had been in an interference between Sola and one Pearson. In the interference Sola conceded priority of invention to Pearson. In our opinion we said: "Appellant strenuously contends that none of the claims here in issue could have been put in interference with the Pearson et al. patent because said patent did not disclose all the limitations contained in the claims in issue. This may be readily granted, but that is immaterial to the question here involved. The only invention disclosed in appellant's application was also disclosed and claimed in the Pearson et al. patent; appellant in an interference proceeding conceded priority to Pearson et al. upon that invention, and an award of priority was made to Pearson et al. Surely, appellant

may not now be awarded a patent for the same invention that he conceded to Pearson et al. by reason of the fact that he has made claims containing limitations which do not define, when considered with the other elements of the claims, anything inventive over the Pearson et al. disclosure and the invention claimed in said claim 7 of their patent."

The case of In re Williams & McCabe, 62 F.(2d) 86, 88, 20 C.C.P.A. (Patents) 738, involved certain claims relative to a fluid oil burner. The appellants there had been involved in an interference with other parties, in which interference appellants disclaimed the invention involved in the counts and cancelled their claims corresponding thereto. In our decision in that case we said:

"After the declaration of said interference appellants filed a disclaimer and canceled the claims which corresponded to said interference counts, stating in their letter of disclaimer that it was found that the subject-matter of said counts was broader than the joint invention of appellants and was the subject-matter of the sole invention of appellant McCabe.

"The examiner and the Board of Appeals held that the subject-matter involved in this appeal is not patentably distinct from that disclaimed by the applicants in the interference referred to, when considered in connection with the cited patents.

"Appellants contend that their said disclaimer of the broad combination, which included 'a thermostatic switch under the influence of heat from the burner operable to close the power circuit after the burner has heated the device to a predetermined temperature' and 'a switch under the influence of combustion conditions of the burner,' can have no possible effect upon the patentability of appellants' present claims, which are limited to a structure which produces a result not possible of accomplishment by the structure of the interference claims. While this statement, standing alone, may be true, it is also true, as contended by the solicitor for the Patent Office, that, appellants having admitted that they are not entitled to the interference counts, they also are not entitled to any subject-matter failing to define invention thereover, and the disclaimed interference issue is available with the same effect as a prior art reference disclosing such subject-matter. In re Wickers & Furlong, 29 App.D.C. 71; In re Sommer, 56 F.(2d) 893, 19 C.C.P.A. [Patents] 1030."

We then proceeded to find that because of elements contained in the claims before us, not found in the interference counts, there was an inventive difference between said claims and said counts, and we reversed the Board of Appeals in its rejection of the claims.

It is true, as asserted in appellant's reply brief, that in all of the authorities relied on by the Solicitor for the Patent Office relating to interference counts, the structures were either concededly in the prior art and hence unpatentable to anyone, or else priority of invention to one of the parties to the interference was either conceded or awarded.

However, we regard that fact as immaterial in so far as the issue here is concerned. Appellant concedes that he is not entitled to a patent for the subject-matter embraced in the interference counts here relied upon by the Patent Office tribunals. In his principal brief appellant states: "It is true that appellant's several adversaries in Interferences Nos. 61,997 and 61,998 should as a result of the dissolution be free to make, use and vend the subject matter disclosed in their respective applications, without possible domination by any patent to issue on the Cole application. * * *"

We are in accord with the foregoing statement, and it must necessarily follow that the adversaries of appellant in Interference No. 65,453 are at liberty to make, use, and vend the invention embraced in their respective applications, with such additions or modifications of structure as involve only mechanical skill in view of the prior art. If the claims before us are not inventively different from the said interference counts in Interference No. 65,453, then their allowance to appellant would clearly prevent such adversaries from making any additions to or changes in the structure embraced in their applications to correspond to the structure embraced in the claims before us, although such changes or additions involved only mechanical skill.

As observed by the Board of Appeals, if there be no patentable distinction between the claims before us and said interference counts hereinbefore quoted, and the claims should be allowed to appellant, then the other parties to said interference proceedings could make contentions similar to that here made and by adding details, ad-

mittedly old, to the condenser embraced in the interference counts, receive patents therefor, resulting in the issue of several patents all predicated on the same invention, and the doctrine of estoppel would, for all practical purposes, have no effect whatever.

We therefore hold, in harmony with our decisions hereinbefore cited, that in order to warrant the allowance of the claims before us the claims must be inventively different from said interference counts; or, in other words, the specific details or limitations in the claims before us not found in said interference counts must, when combined with the structure embraced in said counts, involve invention over said counts.

The Patent Office tribunals therefore committed no error in holding that, unless the added matter in the claims before us forms a true and patentable combination with the matter as to which an estoppel exists, the claims should not be allowed.

We next proceed to examine the question of whether the claims before us, in view of said interference counts and the cited prior art, do involve invention.

With respect to this phase of the case, appellant makes several contentions, dealing for the most part with the proposition that, assuming that the interference counts may properly be considered, the subject-matter of such counts cannot be combined with the structures of Georgiev and Engle in their disclosed form to negative invention with respect to the claims on appeal. Of course, it is not essential that the reference structures be applicable in exactly the form disclosed, and if the modifications of such structures incidental to production of appellant's structure are such as would be obvious to one skilled in the art, then no invention is involved in the claims on appeal.

Appellant places considerable reliance on that element of his closure plug which relates to the shoulder thereon which serves to keep the metal container out of contact with the mounting panel when the condenser is mounted thereon, and argues that no showing of an equivalent is to be found in the references. To this contention the Solicitor for the Patent Office states in his brief as follows: " * * * It is alleged that there is no suggestion of this in Georgiev or in Engle. However, it is submitted that the patent to Engle et al. (R.

30) clearly shows in the ridges 31,31 [1] what is in effect a shoulder, and with a mounting as in the interference counts the shoulder of Engle et al. would perform the identical function argued for by appellant, viz, to keep the wall 29 from contacting with the panel on which the condenser is mounted."

In other words, this amounts to an argument that appellant's insulated plug, in the form designed to insulate the condenser can from the mounting panel, is the plug disclosed in the interference counts so modified as to embody a shoulder such as shown in Engle et al. We are in agreement with the solicitor's contention that such a structure would be obvious to one skilled in the art desiring so to insulate the can of the condenser described in the interference counts, in view of the disclosure of Engle et al.

The placing of the shoulder on appellant's plug merely amounts to the equivalent of an insulating washer placed over the threaded extension of the plug described in the interference counts, assuming that such plug alone does not serve the purpose of insulating the condenser can from the mounting panel. For example, appellant's application here involved concerns two types of mounting, one in which the condenser can is insulated from the panel by the plug itself, the other in which the condenser can comes in mechanical and electrical contact with such panel. With respect to the latter form, appellant states in his specification that it can be converted into the form in which the condenser can is insulated from the panel by interposing an insulating washer between the can and said panel. We do not think this device involves the inventive faculty, since insulating washers are well known and their use for such a purpose is obvious, and the placing of an integral shoulder on such a plug for the same purpose does not appeal to us as being a patentable advance over such a device in view of the showing of shoulders in Engle et al.

Appellant also makes the following contention in his brief: "Aside from these considerations, if the wet electrolytic condenser of Engle were mounted in inverted position, the liquid electrolyte would inevitably seep through the now lowermost cover 13, especially at the open vent hole 33 therein."

This possibility arises, of course, only when it is assumed that the structure of Engle et al., without modification, is placed

in an inverted position. Even in such case, however, the contention of appellant hereinbefore quoted would appear to be merely argumentative in view of the following, quoted from the specification of the patent to Engle et al.: "The cover preferably has a small hole 33 drilled therein under the gasket 28, as shown in Figure 1, to allow any gases to diffuse through or under and around the gasket and to escape. This prevents abnormal pressures from being set up in the cell, *and at the same time does not allow electrolyte to flow out if the condenser is turned over.*" (Italics ours.)

Irrespective of this, and assuming that leakage would result as contended by appellant, it appears to us that one skilled in the art would not be required to exercise the inventive faculty in making such modifications of the Engle et al. structure as would be necessary to overcome such result. For instance, if it were desired to use the structure of Engle et al. in an inverted position, and leakage should result, it would be obvious to locate the vent in the uppermost part of the condenser in its inverted position so that said vent would occupy the same relative position to the level of the electrolyte as does the vent shown in the drawings, and such re-location of the vent would not involve invention.

Appellant makes other contentions along similar lines, which we do not find it necessary to treat in detail. We have examined all of them closely, and we are in accord with the concurring decisions of the Patent Office tribunals that the elements of the appealed claims upon which appellant relies do not render said claims patentable.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.