George R. Ericson, of St. Louis, Mo. (Bertram H. Mann, Jr., of St. Louis, Mo., Donald U. Rich, of New York City, and Edward W. Shepard, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

30 C.C.P.A. (Patents)

**In re BICKNELL et al.**

**Patent Appeal No. 4742.**

Court of Customs and Patent Appeals.

July 6, 1943.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office, after allowing four claims in appellants' application for a patent relating to a carburetor, rejected seventeen claims on grounds which will be referred to hereinafter. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed. Appellants have appealed here from the decision of the board but withdraw the appeal as to all claims except claims 14, 16, 20, 24, and 30 to 35 inclusive.

We treat appellants' statement that the other claims will not be urged, as a motion to dismiss, and the appeal as to them will accordingly be dismissed.

The invention particularly relates to carburetors which are designed to facilitate the starting and warming up of internal combustion engines, especially of the automotive type. The claims are divided by appellants into three groups, and since the portions of each claim relied upon to lend patentability will be hereinafter referred to, it is not necessary to set out typical claims. The propriety of this procedure will appear when the nature of the issues presented is fully understood.

The rejection of the remaining appealed claims was based principally on the ground that they define nothing patentable over the disclosures of the application of one

Jorgensen, Serial No. 748,605, and that of one Joeck, Serial No. 626,520, in view of the patent to one Carter No. 1,896,390, February 7, 1933. (We shall hereinafter refer generally to these applications and the patent to Carter as "the references.") Appellants were the losers in interference proceedings with the applications of Jorgensen and of Joeck.

Appellants state in this court that the novel features of their mechanism upon which they rely to lend patentability to the appealed claims are: First, that the choker valve can close fully under the influence of the thermostat even though the throttle screw may be in engagement with its normal idling stop (and they contend that this feature and the advantages deriving therefrom are not attained or suggested by either Jorgensen or Joeck); second, the free, lost-motion connection between the fast idle block and the choker lever; and third, the combination of the interconnection mechanism of the lost-motion type "fast idle," with means for opening the choke when the throttle is substantially fully open so as to "unload" the intake manifold of excess fuel during cranking.

The details of these features involve the enumeration of a great many members referred to by numerals in the drawings and specifications of appellants and of the references, and without setting out the drawings of appellants and of all the references, a detailed description of such devices would not be helpful. It is our view that the question presented is not sufficiently close to require such detail.

It was the position of the examiner that claims 14, 16, 20, 24, and 30 to 35 inclusive were unpatentable over the issue of Interference No. 73,079 between appellants' application and that of Jorgensen, and that claim 14 of this group was also unpatentable over the issue of Interference No. 73,389 between appellants' application and that of Joeck. The Carter patent was also used as a reference in connection with these claims.

The board, in its decision, stated:

"The principal ground of rejection is that the claims are unpatentable over the issues of the interference, especially in view of the art disclosed in the Carter patent. The examiner has quoted, on page 6 of his statement, the issues of the two interferences. The principal modification of claim 5, for example, over the issue of Interference No. 73,079 resides in the slotted link structure of the member 43 of the application which is claimed to be arranged so that when the member 40 is interposed between the stop screw and abutment, only the latter part of the choke opening movement is affected by this member.

\* \* \* \* \* \*

"The examiner states that, in the counts of Interference No. 73,079, there is included the thermostatic control for the choke valve, the movable stop device 40 operable by the choke valve to fast idle position to prevent full closing and to inoperative position when the choke is opened, the mechanism 43, 40 being arranged to allow partial opening of the choke valve without moving the stop device 40 from the fast idle position and that this structure is considered to include the slotted link.

"The examiner further states that if the Jorgensen disclosure is adverted to, it is apparent that there is a structure permitting relative movement between the stop member and the actuating link, the link being operable by the choke valve in a part-idle position when the choke valve is closed. It is the examiner's view that the similarity in the disclosure is evident and that no inventive change is required to modify the Jorgensen structure to permit free relative motion and that claim 5, for example, differs only in substituting a slotted link for equivalent mechanism in the Jorgensen disclosure and that the freedom of movement merely involves a removal or adjustment of the parts.

"In the count of the interference it is set out that the mechanism is constructed to permit at least partial opening of the choke valve without moving the stop device from its fast idle position. It appears that the mere slotted link structure set up in claim 5 does not distinguish patentably over the count of the interference."

Most of the discussion at this point in the board's decision related to claim 5, which is not before us. Claim 5 was regarded as typical, but the discussion would seem to apply to most of the other claims.

The board then said: "It is not apparent that the Jorgensen disclosure cannot have the choke fully closed by means of the lost-motion connection between the member 112 and the link 110 or that an adjustment sufficient to permit this full closure would amount to a patentable change."

There is considerable doubt as to whether the first portion of this statement with ref-

erence to the Jorgensen disclosure is correct. In any event, however, we agree with the latter portion of the statement that an adjustment sufficient to permit the full closure called for in the claims would not amount to a patentable change.

The board continued: "Claims 34 and 35 include broadly means to resist the opening of the choke valve and the examiner states that this language refers to the spring 20 and latch 14 to secure one end thereof but it is the examiner's position that this is broad enough to cover any resisting means for the choke valve such as the dash-pot G of the Carter patent. It is considered that this limitation as broadly set out in these claims does not render them patentable over the references and reasons given by the examiner."

We have examined the structures of appellants, of Jorgensen, of Joeck, and of Carter. Aside from the contention above referred to, the statement of what the references show is not seriously questioned. Appellants point out that their structure differs in a number of respects from those of the references and that these differences are defined by limitations in the claims and impart patentability thereto.

It is not contended here by the Solicitor for the Patent Office that the references disclose all the elements of the involved claims, but it is contended, as held by the tribunals below, that the structure defined by the claims which is not disclosed in the references does not amount to invention in view of the references.

The Solicitor for the Patent Office expresses the situation in this way: "As has already been stated, the appellants have unsuccessfully contested an interference with Jorgensen and the latter is thus entitled to all patentable subject matter common to the two cases. Appellants, therefore, should not be allowed claims merely because they could not literally have been made by Jorgensen, but it should be made to appear that something involving invention over Jorgensen's disclosure is claimed. It is submitted that the present claims depend for their novelty on what is shown by Jorgensen. Aside from this, they include merely old or obvious features which Jorgensen did not happen to show. Claims should not be allowed to a defeated party on the basis of such distinctions."

Aside from the fact that in said statement the solicitor omitted reference to the application of Joeck and the patent to Carter, we think he has presented the situation as it exists. It seems that appellants are here arguing that since some of the claims do not read literally upon the references, they are entitled to the allowance of the claims in their application, which was in interference with those of Jorgensen and Joeck.

We are in agreement with the contention of the Solicitor for the Patent Office that in order that the appealed claims be allowed to appellants, it must be shown that those things disclosed by appellants and not by the references, amount to invention over the reference disclosures. See In re Cole, 82 F.2d 405, 23 C.C.P.A., Patents, 1057; In re Sola, 77 F.2d 627, 22 C.C.P.A., Patents, 1313; and In re Cady, 111 F.2d 899, 27 C.C.P.A., Patents, 1208. In other words, as far as appellants are concerned, the application of Jorgensen and that of Joeck are prior art.

The elements relied upon by appellants, and set out above as the three novel features, seem to us to be uninventive over the disclosures of the references. These features have been fully analyzed in the decisions below, and the lack of patentable novelty has been pointed out. It would unnecessarily extend this opinion to quote or discuss all the elements in their relation to the rather complex structure, and it would involve the repetition of numerals and other features not necessary to a proper understanding of the case.

It is our view that either the three novel elements upon which appellants have depended are disclosed in the references, or the modification of the reference disclosures so as to meet the limitations relied upon by appellants would not require the exercise of the inventive faculty. We think, therefore, that the Board of Appeals, for the reasons stated by it, properly affirmed the decision of the examiner in rejecting the appealed claims.

The appeal is dismissed as to all claims except 14, 16, 20, 24, and 30 to 35 inclusive, and the decision of the Board of Appeals as to those claims is affirmed.

Affirmed.

LENROOT, Associate Judge, took no part in the consideration or decision of this case.