52 CCPA

**Application of David TAUB, Norman L. Wendler and Harry L. Slates.**

**Patent Appeal No. 7336.**

United States Court of Customs and Patent Appeals.

July 19, 1965.

ceutically active steroids which they now claim in an application serial No. 831,-688, filed August 5, 1959 for "Steroid Production."

> The steroids of the present invention: * * * possess extremely high anti-inflammatory activity, * * * and are especially effective for the treatment of arthritis and related diseases since they can be administered for their cortisone-like action in extremely low dosage thereby minimizing undesired side effects.
>
> * * *

The steroids claimed are distinguished by the presence of a fluorine atom at the 9-position (in the α configuration) and also by a 16β-methyl group. It is the former which will be our primary concern.

The claims on appeal are the only claims in the application and read as follows:

1.  A compound of the formula:—

$$CH_2OR$$
$$C{=}O$$
$$--OH$$
$$CH_3$$

wherein W is selected from the group consisting of keto and β-hydroxy; and R is selected from the group consisting of hydrogen and lower alkanoyl.

2.  16β - Methyl - 9α - fluoro - 11β, 17α - trihydroxy - 1,4 - pregnadiene-3,20-dione 21-lower alkanoate.

3.  9α - Fluoro - 11β,17α,21 - trihydroxy - 16β - methyl - 1,4 - pregnadiene-3,20-dione.

4.  9α - Fluoro - 11β,17α, 21 - trihydroxy - 16β - methyl - 1,4 - pregnadiene-3,20-dione 21-acetate.

---

Frank M. Nolan, New York City (Albert W. Rinehart, Washington, D. C., I. Louis Wolk, Rahway, N. J., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

Appellants lost in interference a generic count that includes species of phara-

As can be seen, claim 1 is generic to a series of 9α-fluoro-16β-methyl, 17-keto or hydroxy steroids in either the 21-ester or 21-alcohol form. Claim 2 is "subgeneric," specifying the 17-hydroxy form, thus a pregnadiene, but also broadly including "lower" alkyl esters in the 21-position. Claim 3 is specific to a 21-alcohol compound and claim 4 likewise is specific to a 21-acetate (ester) compound.

There is no controversy over the fact that appellants have adequately disclosed the claimed compounds in a parent application, of which the appealed application is a division. That parent application serial No. 722,390 for "Steroid Production," was filed March 19, 1958, and was involved in interference No. 89,880, instituted November 26, 1958. The other party to the interference, Rausser et al., was involved on the basis of their application serial No. 733,-843 filed May 8, 1958.[1,2] Only count 2 of the interference is pertinent here:

*Count 2*

A compound of the formula:

wherein X is selected from the group consisting of hydrogen and halo; W is selected from the group consisting of keto and β - hydroxy; and R is selected from the group consisting of hydrogen and lower alkanoyl.

Count 1 related to $\triangle^4$ compounds as compared to the $\triangle^{1,4}$ diene compounds of the claims and has no bearing here. As can

be seen from a comparison of count 2 and the appealed claims, the latter are encompassed by the count when X is halogen (halo).

During the motion period of the interference, Rausser et al. brought a motion to shift the burden of proof based on their parent application serial No. 673,-141 filed July 22, 1957. The party Taub et al. opposed that Rausser et al. motion on the ground that the compounds defined by the counts were not disclosed in the Rausser et al. parent application, serial No. 673,141. In particular, appellants pointed to the fact that the Rausser et al. parent application discloses the 9-hydrogen but not the 9α-fluoro species. The examiner, in granting the motion to shift stated:

\* \* \* Since it is well established that a disclosure of a single species of a generic count is sufficient to determine the issue of priority in an interference proceeding, a finding that Rausser parent application does in fact contain an adequate disclosure of any species within the scope of the present counts would dictate the granting of the motion to shift. Lawson et al v. Bruce et al, 1955 C.D. 205; McBurney v. Jones, 104 U.S.P.Q. 115; Adamson v. Sperber et al, 106 U.S.P.Q. 429.

\* \* \* \* \* \*

It is the judgment of the Examiner that the prior Rausser application Serial No. 673,141 supports species within the scope of the counts in issue. The 9-hydrogen species, together with an adequate statement of utility and method of preparation, are fully disclosed in said prior application. This constitutes a constructive reduction to practice of such species as of July 22, 1957, the filing date of Serial No. 673,141. Consequently, the reduction to practice of a single species under the generic count entitles the party Rausser to the benefit of

---

1. A third party, Agnello et al., abandoned their two involved applications and the interference was dissolved as to them.

2. The Rausser et al. application has issued as U.S. Patent No. 3,164,618 on January 5, 1965.

his earlier filed application for contesting priority on the present generic counts, in accordance with the established practice as outlined for example, in Lawson et al v. Bruce et al, supra.

The benefit of the date of the parent application accorded Rausser et al. made them senior party. Priority subsequently was awarded Rausser et al, on the basis of that date, Taub v. Rausser, 145 USPQ 497 (Bd.Pat.Intf.1964).

The party Taub et al. moved to declare a new interference on counts A, B and C *which exactly correspond to claims 1–3 here on appeal.* Rausser et al. opposed, arguing, in the words of the examiner, that the 9α-fluoro compounds are "embraced by count 2 * * *," and that "what differences there are between the fluoro and non-fluoro compounds amount to differences only in degree, since both types of compounds are anti-inflammatory compounds." The examiner accepted the views of Rausser et al. in his Decision on Motions stating:

. It is the decision of the Examiner that the views of the party

Rausser must prevail. There can be no quarrel with the position that proposed counts A, B and C read directly on count 2 of the interference and thus it is not seen how a patentable difference can be urged merely on the basis of alleged "outstanding and valuable activities" in the compounds of the proposed counts. Here again the 9α-fluoro compounds of proposed counts A, B and C would not sustain separate patents.

Both the decision to grant the motion to shift and the decision to deny the motion to institute another interference on the 9α-fluoro species alone were adhered to by the examiner in a decision on a Taub et al. Petition for Reconsideration (there being no appeal under Rule 244(d)). The examiner stated that it was "immaterial" that Rausser et al. discloses only the 9-hydrogen species in their parent application, and noted again that "the 9-fluoro species is within in the scope of the generic count." [3]

The pertinent dates and support in the applications may be summarized thus:

| Filing Date | Serial No. | Applicants | Disclosure |
| --- | --- | --- | --- |
| July 22, 1957 | 673,141 | Rausser et al. parent | 9-hydrogen species *only* |
| Mar. 19, 1958 | 722,390 | Taub et al. parent | 9-hydrogen species *and* 9-halo species including 9α-fluoro |
| May 8, 1958 | 733,843 | Rausser et al. | " |
| Aug. 5, 1959 | 831,688 | Taub et al. division (on appeal) | " |

Claims 1–4 of the Taub et al. application on appeal were finally rejected:

* * * as being unpatentable over the issue of interference No. 89,880, involving applicants' [appellants'] parent application Serial No. 722,-390. It is again pointed out that the claims *read directly* on count 2

of the interference. [Emphasis ours.]

However, it appears from the record that *previous* rejections had stated that the claims were unpatentable over count 2. That, as we have noted for the past several years, is an ambiguous rejection, a source of much confusion, and may or

3. The initial Decision on Motions is dated June 30, 1961 and the Decision on Petition for Reconsideration is dated September 5, 1961.

may not, within the context of the particular case, satisfy 35 U.S.C. § 132. In attempting to overcome that rejection appellants stated:

> * * * The specific 16β-methyl-9α-fluoro steroids defined in claims 1–4 possess outstanding activities above that possessed by the generic claim of 16β-methyl compounds defined in Count 2 of said interference. It is planned to submit an affidavit very shortly setting forth the results of experimental studies demonstrating these outstanding and valuable activities. Upon the submission of this affidavit demonstrating patentable distinction between claims 1–4 and said Count 2 of Interference 89,880 it is planned to prosecute the subject matter of the instant claims in the present application.[4]

In response to that allegation of "outstanding and valuable activities," the examiner in the final rejection noted first that the affidavit had not been submitted, and then stated:

> * * * the significance of such an affidavit is not seen since *regardless* of any showing of outstanding activity in the 9α-fluoro compounds, the claims herein are not patentable over the aforesaid interference count which *equally embraces* the 9α-fluoro compounds. See M.P.E.P. 709.01. * * * [Emphasis ours.]

As we interpret those comments, the examiner was stating that since the count dominates the fluoro species any affidavits as to properties would be irrelevant.

Appellants filed notice of appeal and in a subsequent amendment submitted an

affidavit of Sanford L. Steelman, which is said to show that the 9α-fluoro species has a "relative systemic cortisone activity * * *" of 3.4 times that of the 9-hydrogen species.

The examiner's answer again stated the claims were rejected as "unpatentable over the issue of interference No. 89,880 * * *," since the 9α-fluoro species defined in the appealed claims "are within the scope of Count 2 * * * [and] therefore, a patentable distinction is not in evidence." The examiner *noted* the affidavit, but considered that the issue in furtherance of which it was presented, i. e. the unpatentability over the count, to have been answered by the inter partes Decision on Motions in the interference. The examiner's answer reproduced a portion of the Decision which stated, inter alia:

> * * * the record herein does not establish patentable distinctness between the 9α-fluoro species of the appealed claims and the generic count. In this regard the Steelman affidavit, supra, is deemed *irrelevant* since the invention resides in the introduction of the 16-beta-methyl group and not in the 9 alpha-fluoro group. * * * [Emphasis ours.]
>
> * * * * * *
>
> * * * In the instant case the *generic* count was first filed while 9-fluoro species is within the scope of the generic count. Accordingly, the 9α-fluoro species of claims 1–4 and the existing genus will not sustain separate patents.

However, as well as noting that the differences between the 9-fluoro and 9-hydrogen species "appear to amount to differences in degree only * * *," the

---

4. Those comments are from an amendment dated April 11, 1960. From the record it appears that the motions in the interference had already been filed, a letter from the Patent Interference Examiner, dated April 8, 1959, having set the expiration of the motion period as May 25, 1959. Thus it would appear that appellants, learning from the interference that Rausser et al. planned to rely on their parent case filed July 22, 1959, and

that the Rausser et al. parent case supported only the hydrogen species, did two things. First, in the interference they opposed the motion of Rausser et al. to shift the burden of proof based on the Rausser et al. earlier parent case, and moved to declare a new interference on the 9α-fluoro species alone. Second, appellants filed on August 5, 1959, the instant application dividing out the 9α-fluoro species.

examiner seemed to require further tests since he quoted that portion of the Decision on Motions which stated:

> * * * It should further be noted that the Steelman affidavit fails to compare the 9α-fluoro species of claims 1–4 with the 9α-*halo* species within the scope of count 2. * * *

Appellants responded by filing two additional affidavits of Steelman, the first of which apparently shows that the 9α-fluoro-16-methyl compound is 3 times more active than the desmethyl compound, 9α-fluoro-16-hydrogen steroid. The second affidavit compared the 9α-fluoro compound with the corresponding *bromo* compound, and found the fluoro compound to be 255 times more active. On remand, the examiner admitted the affidavits "under the provisions of Rule 195," but reaffirmed the rejection:

> The newly presented affidavits purportedly "establish a non-obvious and patentable distinction between the 9α-fluoro species of appealed claims 1–4 and both the prior art 16-desmethyl steriod and other 9-halo species within the scope of count 2". Appellants therefore urge that under the doctrine of In re Ruff et al, 118 USPQ 340, they should be entitled to the 9α-fluoro species of the appealed claims in view of the Dr. Steelman affidavits and the fact that there was no "art-recognized equivalence" between the previously known 9α-fluoro steroids and their 9-hydrogen counterparts.

The Examiner fails to appreciate the significance of the newly presented affidavits since the primary issue in this appeal is not concerned with equivalency or non-equivalency of members of a Markush group but is rather directed to the fundamental proposition that a *reference* to a claimed species precludes a separate patent in *that* species. The In re Ruff decision is not seen to be in point since the present count of Int. No. 89,880 still *includes* the 9α-fluoro species defined in the appealed claims. Thus, there is no reason for a departure from the position taken in the Examiner's Answer that the generic count and the 9α-fluoro species within the scope of said count will not sustain separate patents.

To us the foregoing establishes that 1) appellants were faced with a rejection of the claims as "unpatentable over" count 2 of the interference. 2) appellants argued the "unpatentable over" rejection and submitted affidavits in an attempt to establish a "patentable distinction" based on non-obviousness of the fluoro species over the hydrogen species, but 3) it became clear that the examiner *assumed* all species *within* the count to be "prior art" by virtue of the priority award. Although the examiner entered the affidavits, he considered them "irrelevant" and failed, in his own words, to "appreciate the[ir] significance * * *." *The board*, in its initial decision and upon reconsideration, although discussing the affidavits [5] *did not, as we see it, make*

---

5. The board, after affirming the "unpatentable over" rejection of the examiner, stated that the "count of interference covers the 9-halo compounds, i. e., the 9α-fluoro * * * which *include* the claimed compounds." The board *then* discussed the "higher potency" shown by the affidavits. The board stated that there was no basis for appellants' election of the bromo derivative as representative of the halo species, since "chlorine most nearly approaches the fluorine in molecular weight and activity * * *." Without apparent support the board stated:

> * * * the relative activities are not unexpected in view of the relative molecular weights of the bromo and fluoro substituents and the expectation of the art with respect to the relative activities of the various 9α halogen derivatives. * * *

In response, appellants filed a request for reconsideration and an affidavit which showed that the 9α-fluoro is 8 times more active than the 9α-chloro derivative. Although the criticism of the bromo affidavit was first made by the board, the appellants' responding chloro affidavit was deemed by the board on reconsideration to be "belatedly presented, as Rule 197(b)

*any new ground of rejection,* either express or implied.

It is not clear whether the examiner and the board considered that count as "prior art" to be applied against the instant claims in a section 102(a) "anticipation" rejection, since the examiner stated that "the claims read directly on count 2," [6] or whether, since the claimed species is included within the count, they considered *domination* by the count to be the equivalent of specific claiming by the prior inventor. Insofar as the former interpretation of the rejection may have been meant, it is not correct, since "prior art" in the sense of section 102(g) cannot here be the basis of a section 102(a) rejection, the invention not being *publicly* "known or used."

We also do not agree with the rejection as based on the concept that domination by the count precludes the showing of a patentable distinction thereover. The examiner and the board treated *every* compound within the scope of count 2 as "prior art," in the sense of section 102(g) as an "invention * * made in this country by another," "before the applicant's invention." We cannot agree with the assumption that in the factual situation above presented *every* compound within the count (in the sense that it would infringe the count) is "prior art." The winning of priority on a broad count was based on evidence of priority with respect to only one species, wherein X was hydrogen, not halo or fluoro.

Both applications initially involved in the interference, the Rausser et al. continuation and the Taub et al. parent application, show adequate support for a generic count inclusive of both halogen and hydrogen at the 9-position The problem arises from the fact that one may establish priority for a generic claim on the basis of a showing that he was prior as to a single species. See In re Kyrides, 159 F.2d 1019, 34 CCPA 920.

Here Rausser et al. was awarded priority on the basis of the disclosure of the hydrogen species in their parent application, being entitled to its filing date, July 22, 1957, as the date of conception and constructive reduction to practice. Since it has been adjudicated that Taub et al. did not meet their burden of proof showing they were the first inventors of the 9-hydrogen species, they cannot be said to be the first inventors thereof. However, no such determination as to the 9α-fluoro species was made. Since both parties in effect rest on their filing dates as to the 9α-fluoro species, the record indicates that Taub et al. are prior as to that species, their parent case being earlier than the Rausser et al. continuation case. Thus, *within the fact pattern here,* logic dictates that *count 2 cannot be the prior invention of another applicable against Taub et al. insofar as the 9α-fluoro species is concerned,* under section 102(g). Thus the rejection must fall, and it becomes necessary to remand the case for a full consideration of the

---

demonstrates," and was not accepted. The board's response to the petition was:

    Appellants' petition does not challenge our conclusion that the differences in activity between the various 9α-halo compounds represented in the affidavits referred to our decision was not unexpected in view of the relative molecular weights of the 9α-halo substituents and the expectation of the art that the anti-inflammatory activities of these compounds would vary with their molecular weights in the manner shown. Appellants, instead, reiterate their contention, previously advanced, that we should go behind the count of the interference on which the appealed claims

are rejected and consider the evidence of priority as to each of the specific compounds included in the interference count. We have discovered no precedent for such a piece-meal determination of priority on an *ex parte* basis or for the consideration of arguments which appear to be related to the issue of priority over which we have no jurisdiction.

Appellants subsequently challenged the board's statements in full.

6.  Since claims, "read on" things, not other claims, we construe the examiner's statement as saying the broad *count "reads on"* the claimed *species.*

issue on which appellants *attempted to join* the Patent Office, the determination of whether the 9α-fluoro species is obvious over the 9-hydrogen species of the count in view of appellants' affidavits.

We do not read In re Fenn, 50 CCPA 1163, 315 F.2d 949, 137 USPQ 367; In re Boileau, 163 F.2d 562, 35 CCPA 727; In re Cole, 82 F.2d 405, 23 CCPA 1057, or In re Sola, 77 F.2d 627, 22 CCPA 1313 to the contrary. Similarly, since the holding in In re Gregg, 244 F.2d 316, 44 CCPA 904, 907, was founded on the fact that "there is no evidence to show completion of the invention covered by the appealed claims by appellant at any time prior to Coakwell's filing date," that is, "the Coakwell patent is a reference under Section 102(e) * * *," we do not find that case to indicate a contrary result.

For the foregoing reasons the rejection of the claims on the interference count is *reversed* and the application is *remanded* for further proceedings not inconsistent herewith.

Reversed and remanded.

SMITH, J., concurs in the result.

Smith, J., dissented in part.