**Application of Charles L. COR-MANY et al.**
**Patent Appeal No. 8775.**

United States Court of Customs
and Patent Appeals.
April 19, 1973.

Mark Levin, Pittsburgh, Pa., atty. of record, for appellants; Chisholm & Spencer, Pittsburgh, Pa., Jones & Lockwood, George R. Jones, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 3–5, 7, and 9–12 of application serial No. 565,704, filed July 18, 1966, entitled "Stabilization." We affirm.

The invention relates to the stabilization of methylchloroform, also called 1,-1,1–trichloroethane, a solvent having utility in industrial degreasing in both liquid and vapor phase. When so employed, methylchloroform has a tendency to decompose rapidly, especially when in contact with aluminum and other light metals, and in decomposing also has a corrosive effect on the metals. The claims are all directed to stabilized methylchloroform compositions in which

the stabilizer is a mixture of a nitroalkane, such as nitromethane, and an organic epoxide having 2 to 8 carbon atoms, such as butylene oxide or propylene oxide.

Claim 12 is the main claim involved. It reads (emphasis ours):

> 12. Methylchloroform having therein dissolved the combination of (a) a minor amount of a nitroalkane selected from the group consisting of nitromethane and nitroethane *large enough to stabilize liquid methylchloroform refluxing under atmospheric conditions under total reflux and in which is immersed an aluminum strip,* and (b) from 0.05 to 10 percent by weight of an organic epoxide having 2 to 8 carbon atoms.

The emphasized quantity limitation is important to the main issues, as will appear. All other claims except claim 11 are dependent on claim 12. Claim 11 reads:

> 11. A composition of matter comprising methyl chloroform containing a stabilizing amount of a mixture of propylene oxide and a nitroalkane having 1 to 3 carbon atoms.

There are three closely interrelated grounds of rejection, one under 35 U.S.C. § 103, the other two being under 35 U.S.C. § 112. The only prior art relied on to support the § 103 rejection for obviousness consists of counts 1 and 2 of Interference No. 93,486 [1] which involved appellants' parent application, serial No. 812,791 (1959), and a patent to Brown, No. 3,049,571. Priority was awarded to Brown. Appellants prosecuted an intermediate application, serial No. 293,273 (1963), filed as a continuation-in-part of the one in interference, and

the present application is a continuation of the latter. The examiner's rejection under § 103 was on the ground that all claims on appeal are unpatentable over the counts of the interference. The examiner stated:

> The determination of the optimum amounts of stabilizer to use is within the expected skill of a chemist in the art. No unobviousness is seen in the recitation of nitroethane (claims 4–5) and propylene oxide (claim 11) since these compounds would clearly be suggested by the homologous compounds recited in the Counts.

The § 112 rejections were newly made in the Examiner's Answer and, as sustained by the board, apply to all appealed claims except claim 11. The grounds of rejection were that the claims are "indefinite and inadequately supported" in the specification.

Concerning ourselves for the present with all claims except claim 11, it appears from appellants' brief that, notwithstanding the adverse award of priority, they have "continued to press for allowance of claims to the present invention" on the theory that they are distinguishing from the lost counts in their use of the quantitative limitation we have emphasized in claim 12, supra, "to set apart the claimed invention from the invention for which Brown was awarded priority." Thus that limitation becomes the crux of this appeal. Appellants are candid in stating that for them to prevail this court must recognize that the board erred in holding "the claim language is indefinite and inadequately supported."

We regard indefiniteness of claim language and inadequate support for it in the specification to be distinct

1. The interference counts read:
> Count 1
> A composition of matter comprising methyl chloroform containing a minor amount of nitromethane and dissolved therein a stabilizing amount of vicinal monoepoxide having from 4 to 6 carbon atoms.

> Count 2
> A composition of matter comprising methyl chloroform containing a stabilizing amount of nitromethane and from 0.10 to 1.5 weight per cent of butylene oxide.

**1000**

questions, In re Borkowski, 57 CCPA 946, 422 F.2d 904 (1970); In re Hammack, 57 CCPA 1225, 427 F.2d 1378, 166 USPQ 204 (1970); In re Swinehart, 58 CCPA 1027, 439 F.2d 210, 169 USPQ 226 (1971), and we shall therefore consider them separately, the former being a question of compliance with the second paragraph of § 112 and the latter a question of compliance with the first paragraph.

Appellants have chosen to define the amount of nitroalkane used for stabilization by the phrase "large enough to stabilize liquid methylchloroform refluxing under atmospheric conditions under total reflux and in which is immersed an aluminum strip." Why does the Patent Office deem that definition of quantity indefinite? Enough is enough. It is because of the word "*stabilize*." The board said, "the stabilization standard in claim 12 and the claims dependent thereon is indefinite because the *degree of stabilization is uncertain*." (Emphasis added.)

Translated in terms of a § 112, second paragraph, requirement, it is apparent that the board's holding was that claim 12, and the claims dependent thereon, *do not particularly point out and distinctly claim the subject matter which applicants regard as their invention.* If that be true, the rejection of those claims must be sustained. In re Prater, 415 F.2d 1393, 56 CCPA 1381 (1969); In re Borkowski, supra; In re Moore, 439 F. 2d 1232, 58 CCPA 1042 (1971); and In re Cohn, 438 F.2d 989, 58 CCPA 996 (1971).

Speaking of the requirement of the second paragraph of § 112, we said in *Moore*:

* * * the definiteness of the language employed must be analyzed— not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.[2]

Footnote 2 to that statement reads:

2. It is important here to understand that under this analysis claims which on first reading—in a vacuum, if you will—appear indefinite may upon a reading of the specification disclosure or prior art teachings become quite definite. It may be less obvious that this rule also applies in the reverse, making an otherwise definite claim take on an unreasonable degree of uncertainty. [Citing the *Cohn* and *Hammack* cases, supra.]

Discussing the second paragraph § 112 requirement in *Borkowski*, supra, we said:

If the scope of subject matter embraced by a claim is clear, and *if the applicant has not otherwise indicated that he intends the claims to be of a different scope* [citing *Prater*, supra, as an example of such a case], then the claim does particularly point out and distinctly claim the subject matter which the applicant regards as his invention. [Emphasis added.]

The *Prater* exception emphasized in the above quotation is what is important here. The relevant portion of the *Prater* opinion is the discussion of claim 9, as to which we first expressed our agreement with appellants that "claim 9 cannot be read in a vacuum but instead must be read in the light of the specification." We next found that, so reading the claim, it "read on a mental process augmented by pencil and paper markings" and was not limited to a "machine-implemented process." We had already found—not on the basis of anything in the Prater specification but on the basis only of contentions and admissions of the appellants in briefs and arguments—that they did not regard as their invention and did not intend their claim to cover a process which could be carried out by mental operations aided by pencil and paper. Having construed claim 9 in the light of the specification and found it to be of such scope as to include what appellants said they did *not* intend to include, we therefore held the claim did not comply with the second paragraph of § 112. As we shall show, we have a similar situation here.

The first step in the demonstration is to construe claim 12 in the light of appellants' specification, having particular reference to the meaning of the word "stabilize."

The specification teaches that unstabilized methylchloroform decomposes within "all too brief a period," and "loses its practical value." It decomposes in five minutes at reflux temperature in the presence of aluminum. It is disclosed that nitromethane *alone* may be used as a stabilizer in various concentrations between 2 and 10 per cent by weight of the methylchloroform. The discussion of the use of nitromethane by itself concludes with the sentence,

> Lower concentrations, e. g., 0.5 weight per cent, are possible but not, as a rule, recommended when nitromethane is the sole stabilizing component of the composition.

But this is not the invention of claim 12, which is limited to stabilization by a *mixture* or "combination" of nitroalkane and certain epoxides. Using such mixtures, the teaching of the specification is in these words:

> With other stabilizing materials, these lower concentrations are useful. An illustrated concentration range of nitromethane is, therefore, from 0.01 to 3.0 weight per cent.

There are two specific examples in the specification of the use of nitromethane in each of which the amount used is 3% by weight of the methylchloroform.

On the basis of this disclosure, there are two possible constructions of the key clause in claim 12. If we read "amount * * * large enough to stabilize" as referring to a stabilizing amount of nitroalkane used *alone*, the disclosure teaches a lower "possible," albeit not as a rule recommended, amount of "0.5 weight per cent." If we read it as meaning enough nitroalkane to stabilize in the composition claimed, which includes organic epoxide, the lower amount is 0.01 weight percent. Taking the view most favorable to appellants— which is the former reading—we think

the claim clearly includes as little as 0.5 weight percent. As we pointed out in *Prater,* citing many precedents, claims in pending applications must be given the broadest reasonable interpretation consistent with the specification. With the possibility of reading claim 12 to include 0.01 percent we think reading it to include 0.5 percent is very reasonable. Appellants' brief has no adequate refutation to the propriety of the board having so read it and we so read it.

We turn now to the evidence which shows that appellants do not regard 0.5 weight percent of nitroalkane alone as "large enough to stabilize" and hence not within their invention. The evidence is in the form of two Reich affidavits filed under Rule 132. The first affidavit makes the following points: (1) Half a volume percent of nitromethane in methylchloroform in the presence of aluminum is not a stabilizing concentration. (2) 0.7 volume percent stabilizes methylchloroform for 20 minutes and 1.0% for 240+ hours; the former is not regarded as stabilized. (3) When butylene oxide, 0.5% by weight, is added to 0.5% by volume of nitromethane, the mixture "will not protect liquid methylchloroform against the aluminum induced decomposition." (4) A "nitromethane concentration of at least about one weight percent is necessary to impart a significant degree of protection against the type of methylchloroform decomposition for which the procedure [of] Example I of this application tests." The second Reich affidavit compares decomposition times of methylchloroform containing various concentrations of nitromethane, using the test procedure of Example I of the application, leading the affiant to conclude

> * * * that the minimum nitromethane concentration methylchloroform must contain to pass the test of the aforesaid Example I *and demonstrate a stability* under reflux conditions in the presence of aluminum is *in excess* of 0.85 volume percent and *at least* 0.9 volume percent. [Emphasis ours.]

Thus, to summarize appellants' own proofs, they establish that what they mean by "stabilize" is a condition brought about by the use of at least 0.9 volume percent of nitromethane. That amount is said to have prevented decomposition for 75 hours. In the test using 0.85% nitromethane decomposition occurred in 15 minutes.

From this evidence we are bound to conclude, first, that 0.9% is a critical minimum and, second, that "stabilize" means to appellants something of the order of 75 hours or better and not a mere matter of minutes.

██ Applying the law of § 112, second paragraph, as we have construed it in the cases referred to above, claim 12 and the claims dependent thereon include within their scope the use in the composition of an amount of a nitroalkane as small as 0.5 weight percent. Appellants' affidavits make clear that this is not an "amount * * * large enough to stabilize" under the test conditions prescribed in these claims and that they do not regard it as within their invention. These claims, therefore, do not particularly point out and distinctly claim what appellants regard as their invention and do not comply with § 112, second paragraph. For this reason alone their rejection must be affirmed.

██ Turning to the other aspect of the § 112 rejection, the same facts discussed above establish that claim 12 and its dependent claims are not supported by the disclosure. This rejection rests on the *first* paragraph of § 112. The proofs show an amount "large enough to stabilize" is at least 0.9 volume percent. The specification not only lacks support for this but is in direct conflict with it. Furthermore, nowhere does the specification teach that when a *mixture* of stabilizers is used, as all the claims require, the nitroalkane component, *by itself*, must be in an amount sufficient to stabilize the methylchloroform. This ground of rejection was therefore well taken.

We have left for consideration only claim 11. The rejection for unpatentability over the counts lost to Brown is the only one before us as to this claim. The board said:

Brown being prior to appellants with a composition wherein the epoxide is butylene oxide, the only issue is the obviousness of substituting the closely related homologous epoxide propylene oxide. On its face, such substitution would be obvious within the meaning of 35 U.S.C. § 103, and appellants have furnished neither argument nor data to establish any semblance of unobviousness.

 Appellants argue that "Brown is *not* prior as to the composition of this claim except for having used butylene oxide rather than propylene oxide," which is a tacit admission that as to a *butylene* oxide-nitromethane mixture as stabilizer for methylchloroform Brown *was* prior. Moreover, the counts speak for themselves. Appellants appear to concede that 35 U.S.C. § 102(g) makes the prior invention of another, as established by an adverse award of priority, a bar to the patentability of the *identical* subject matter involved in the priority award. However, they contend that because the Brown invention "was unknown" it is not "prior art" under § 103. We have held otherwise in In re Taub, 348 F.2d 556, 52 CCPA 1675 (1965), and In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967). It is not a relevant consideration that Brown's prior invention was unknown, either under § 102(g) or the *Taub* and *Risse* cases. The subject matter of count 2, which presents the clearest case, being the prior invention of another, is, under the above cases, prior art under § 103 and the holding of obviousness by the board is without error.

The decision of the board is affirmed.

Affirmed.

BALDWIN, Judge, (concurring).

I agree with Judge Lane's treatment of the rejection of claims 3–5, 7, 9, 10

and 12 based on the *first* paragraph of section 112. The entire court having thus concluded that the rejection of the claims on that basis was correct, it becomes unnecessary for the disposition of this case to even consider any rejection which might have been made based on the *second* paragraph of section 112.

With regard to claim 11, I agree that appellants have neither established that the *judicial* doctrine of lost counts, with the limitations placed on it in *Risse,* should be overruled nor that it is not applicable to the facts before us. Appellants make much of the fact that because their application was in interference with a *patent,* they could not introduce a count covering the *propyl* species into the interference. At the same time, however, appellants appear to concede that Brown's butyl species was prior to their own propyl species. That being the case, appellants could not have obtained a claim to the propyl species under the doctrine of lost counts even if they could have introduced into the interference a claim covering the propyl species, and thus could have brought in evidence showing their invention date regarding that species.

LANE, Judge, concurring, with whom MARKEY, Chief Judge, joins.

The board held claims 3–5, 7, 9–10 and 12 to be "inadequately supported" by the specification and sustained the rejection of those claims under 35 U.S.C. § 112. It did so on the finding that:

> At no point in the application is there any indication that, when a mixture of nitroalkane and epoxide is used, the former component should be used in amount "large enough to stabilize liquid methylchloroform refluxing under atmospheric conditions under total reflux and in which is immersed an aluminum strip."

The board's holding was that there is no description of the claimed invention in the specification as required by the first paragraph of § 112. In re Smith, 458 F.2d 1389, 59 CCPA ——, —— (1972). That conclusion is well founded.

Appellants rely on example I of their specification in which 3.0% nitromethane was found sufficient to stabilize methylchloroform and was also used in conjunction with 1.0% butylene oxide to give an even longer stabilization period. That example does not suggest the claim limitation. It is at best only consistent with the claims. The example fails to indicate to one of ordinary skill in the art that the quantity of nitroalkane to be used when an epoxide stabilizer is added is an amount "large enough to stabilize liquid methylchloroform refluxing under atmospheric conditions under total reflux and in which is immersed an aluminum strip." See In re Smith, supra; In re Lukach, 442 F.2d 967, 58 CCPA 1233 (1971).

The board's decision is clearly sustainable on the ground that the specification lacks a legally sufficient description of the claimed subject matter. Affirmance on that basis renders consideration of the § 112, *second* paragraph, rejection unnecessary, and we do not reach it. Although the principal opinion would sustain the second paragraph rejection as well as the first paragraph rejection, we are not convinced of its correctness on the facts of this case. Having determined that the specification does not describe the claimed invention, we see no reason to attempt to define the claim language by reference to that specification.

We affirm the board's decision with respect to claims 3–5, 7, 9–10 and 12 on the basis of the § 112, *first* paragraph, rejection.

We agree that In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967) is controlling with respect to claim 11 and the board's decision as to that claim is also affirmed.