**Application of Charles R. SUSKA.**

**Appeal No. 78–586.**

United States Court of Customs and Patent Appeals.

Jan. 11, 1979.

1. A continuation-in-part of application serial No. 220,815, filed January 26, 1972.

Frank W. Ford, Jr., Brumbaugh, Graves, Donohue & Raymond, New York City, attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the Patent and Trademark Office Board of Appeals ("board") which affirmed the examiner's rejection of claims 1–5, 10, 20, and 23 in application serial No. 279,198, filed August 9, 1972, for "Controlled Release Door Holder." [1] We affirm.

Appellant was involved in an interference, *Suska v. Martin*,[2] wherein priority was awarded to Martin because appellant, although found to be the first to reduce the invention of the counts to practice, had suppressed and concealed the invention of the counts.[3] The claims of the present application were rejected under 35 U.S.C.

2. Interference No. 98,374.

3. Opinion and Decision of Board of Patent Interferences, dated August 27, 1975 (unpublished).

§ 103 as obvious in view of the lost counts in combination with two other prior art references. Appellant concedes for purposes of this appeal that the finding of obviousness is correct if the invention of the lost counts is statutory prior art against him under 35 U.S.C. § 103.

The board adopted the examiner's position that appellant is barred by 35 U.S.C. § 102(g) from obtaining claims to the subject matter of the counts and by 35 U.S.C. § 103 from obtaining claims rendered obvious by the invention defined by the lost counts considered with the other prior art references. The board reasoned:

Martin filed in this country January 11, 1971; appellant filed in this country January 26, 1972. Thus, on its face, "before the appellant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." [35 USC 102(g), first sentence.] Appellant, in order to overcome the reference, had to avail himself of an interference procedure, 35 USC 135. The interference terminated with the Board of Patent Interferences after finding suppression and concealment by applicant [appellant], awarding priority to *Martin*. Thus, appellant's right to use such documents as his "204" affidavit to antedate Martin's conflicting subject matter has been determined. For us to now follow appellant's reasoning to its logical conclusion . . . we would condone a situation in which, by presenting claims admittedly obvious in view of the secondary prior art, the losing party to an interference . . ., such as the instant appellant, could be granted a patent which would cover all obvious modifications of an invention defined by the interference counts [as] to which he has been adjudicated not to be the first inventor. Obviously, such a procedure, in our opinion, would make the interference decision a nullity. [Footnotes omitted.]

The dispositive issue is whether the invention of the interference counts which were lost to an opponent because of suppression or concealment is prior art under section 103 notwithstanding the fact that appellant was the first to reduce that invention to practice. Can that invention be combined with other prior art to show obviousness?

In *In re McKellin*, 529 F.2d 1324, 1328, 188 USPQ 428, 432–33 (CCPA 1976), this court stated:

The subject matter of counts lost in an interference is not, for that reason alone, statutory prior art to the losing party. We must therefore consider whether the subject matter of the counts lost in the interference falls within a prior art paragraph of section 102. If it is found that the subject matter of the lost counts is prior art under section 102, it may be used alone or in combination with other references under section 103.

The gist of appellant's argument is that, under section 102(g), an invention must be made in this country by another *before* his invention in order to be prior art to him; that, since it was factually determined in the interference that he reduced the invention of the counts to practice before Martin, it is not *prior* art and, therefore, cannot be used against him to support an obviousness rejection under section 103; and that section 103 clearly requires that the state of the art be evaluated at the time the *claimed* invention was made, at which time Martin's invention, as defined in the lost counts of the interference, had not even been reduced to practice.

The solicitor contends that Martin, the interference winner, is *de jure* the first inventor of the invention of the counts; that, since appellant suppressed and concealed it, he suppressed and concealed the obvious modifications of it which he presently claims; and that appellant, therefore, cannot claim a date of invention prior to Martin's date of invention of the interference counts. In short, the solicitor's position is that appellant, by his suppression and concealment, lost the right to rely on his actual date of invention not only for priority purposes, but also for purposes of avoiding the invention of the counts as prior art under a section 103 obviousness rejection.

The public policy underlying the suppression and concealment doctrine was stated by the Supreme Court in *Kendall v. Winsor,* 21 How. 322, 62 U.S. 322, 328, 16 L.Ed. 165 (1858), as follows:

> The true policy and ends of the patent laws enacted under this Government are disclosed in that article of the Constitution, the source of all these laws, viz: "to promote the progress of science and the useful arts," contemplating and necessarily implying their extension, and increasing adaptation to the uses of society. . .
> By correct induction from these truths, it follows, that the inventor who designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public, comes not within the policy or objects of the Constitution or acts of Congress. He does not promote, and, if aided in his design, would impede, the progress of science and the useful arts.

In *Mason v. Hepburn,* 13 App.D.C. 86, 96, 1898 C.D. 510, 517 (1898), which is often regarded as the origin of the suppression and concealment doctrine,[4] the court, after quoting from *Kendall v. Winsor, supra,* stated that—

> The true ground of the [suppression and concealment] doctrine, we apprehend, lies in the policy and spirit of the patent laws and in the nature of the equity that arises in favor of him who gives the public the benefit of the knowledge of his invention, who expends his time, labor, and money in discovering, perfecting, and patenting, in perfect good faith, that which he and all others have been led to believe has never been discovered, by reason of the indifference, supineness, or

wilful act of one who may, in fact, have discovered it long before.

*Thomson v. Weston,* 19 App.D.C. 373, 381, 1902 C.D. 521, 527 (1902), reaffirmed this reasoning:

> [B]y deliberate concealment or suppression of the knowledge of his [the inventor's] invention he subordinates his claim, in accordance with the general policy of the law in the promotion of the public interest, to that of another and bona fide inventor who during the period of inaction and concealment shall have given the benefit of the discovery to the public. Viewed in the light of "the true policy and ends of the patent laws," the latter is *the first to invent,* and therefore entitled to the reward. [Emphasis added.]

Congress, in enacting section 102(g), codified the existing law, including the suppression and concealment doctrine. *See Young v. Dworkin, supra* at 1279, 180 USPQ at 390; *In re Bass,* 474 F.2d 1276, 1298–99, 59 CCPA 1342, 1370–71, 177 USPQ 178, 195 (1973). This court has consistently applied it. *See, e. g., Horwath v. Lee v. Long,* 564 F.2d 948, 950, 195 USPQ 701, 704 (CCPA 1977); *Peeler v. Miller,* 535 F.2d 647, 655, 190 USPQ 117, 123 (CCPA 1976).

The result of applying the suppression and concealment doctrine is that the inventor who did not conceal (but was the *de facto* last inventor) is treated legally as the first to invent, while the *de facto* first inventor who suppressed or concealed is treated legally as a later inventor.

Although the previous cases have involved application of the suppression and concealment doctrine in a priority dispute,[5]

---

**4.** *But see Young v. Dworkin,* 489 F.2d 1277, 1283, 180 USPQ 388, 393 (CCPA 1974) (Rich, J., concurring).

**5.** Both parties agree that this is a case of first impression. Our review of other lost counts cases indicates that they are readily distinguishable. In *In re McKellin, supra,* the lost counts were held not to be prior art because there was no proof that the invention was made *in this country* as required by § 102(g); moreover, since the public policy against those

who suppress and conceal was not involved, the court had no occasion to distinguish between the *de facto* first inventor and the *de jure* first inventor in deciding the prior art issue. In *In re Yale,* 347 F.2d 995, 52 CCPA 1668, 146 USPQ 400 (1965), and *In re Ogiue,* 517 F.2d 1382, 186 USPQ 227 (CCPA 1975), a concession by the appellant of another's priority rendered the counts proper prior art under § 103. In *In re Taub,* 348 F.2d 556, 52 CCPA 1675, 146 USPQ 384 (1965), the counts were held to be proper prior art because the interference win-

we see no justification for not applying it in a case involving an ex parte application for a patent. If an applicant were granted a patent on claims to obvious variations of the invention of the counts which he lost in an interference because of his suppression and concealment, the public policy underlying the suppression and concealment doctrine would clearly be frustrated. The rights of the *de jure* first inventor would clearly not be commensurate with the scope of the benefits to the public resulting from his disclosure of the invention.

Appellant cites *Steierman v. Connelly*, 197 USPQ 288 (Comm'r Pat. 1976), in support of his position that suppression and concealment do not affect an inventor's right to a patent or his right to rely on his actual date of invention for purposes of sections 102 and 103. Conceivably, but for the interference winner, appellant might be allowed the appealed claims; but that is not this case. As far as section 102 is concerned, consideration of public policy under-

lying the suppression and concealment doctrine is noticeably absent from the Commissioner's opinion in *Steierman v. Connelly, supra.*

In view of the foregoing, we hold that the invention of the counts lost by appellant in the earlier interference is, because of his suppression and concealment, proper prior art under section 103 against the claims on appeal. Since appellant has conceded that these claims are directed to obvious variations of the invention of the lost counts, it follows that the decision of the board must be *affirmed.*

*AFFIRMED.*

---

ner had been awarded priority on the basis of first invention; moreover, the appellant was allowed claims which were *patentably distinct* from the counts lost in the interference.